The next case on the calendar is American Federated Title Corp versus GFI Management Services. Good morning, Mr. Zemel. Yes, good morning. May it please the Court, I'm Franklin Zemel with Saul Ewing, Arnstein & Lehr on behalf of American Federated Title Corporation. We are here almost a decade after the judgment debtors filed the lawsuit in the Circuit Court of Miami-Dade County. We have traveled through nine or ten different courts, and we are here today to try to collect on these judgments. It's the public policy of New York to see to it that judgments are enforced. This judgment, this was a settlement that was entered into by your client with companies that might be expected to be difficult to collect from without getting any guarantee from the individuals that everyone knew was behind those companies. Is that a fair statement of what happened here? Yes, and what's also a fair statement, Judge Lynch, is that that judgment also said, quote, nothing contained herein shall in any way limit AFTC from taking any and all efforts to collect on its judgment. And extraordinarily, it has two other provisions. Number one, the judgment debtors stipulated that notwithstanding the stipulated entry of the judgment, that we were entitled to those judgments no matter what, because they had lost every claim, they had lost every defense, they had lost everything. And I'll go one step further. The judgment debtors also stipulated that we are the bona fide prevailing party for purposes of that litigation, notwithstanding the existence of the settlement. So at the time frame when the judgment debtors had lost everything and their bankruptcies Was there no argument or no allegation in that suit or no proceeding against the owner of those corporations? Individually? Yeah, was he not a party? There was no veil-piercing kind of thing going on then? Correct. That is true. So only because I've lived through this, and I actually had hair when this case started, okay, I know what we have been through over a decade and the desperate, desperate fight to get them off our properties, to get our properties back, to extricate them while they collected $13 million of our subtenant revenue and put it in their pocket, while Mr. Gross took a $6 million tax deduction and put that in his pocket, while he milked every single penny that he could take. And that's the second public policy that we're talking about. There is a factual finding by the district court, is there not, that the management fees were bona fide transactions for value. Is that wrong? On a quantitative basis. I think that was a yes or no question. You can explain the answer. But am I wrong that there was a factual finding that the management fees were bona fide transactions for fair, reasonable value? I can't tell you the exact language, but we chose, based upon the law in New York, we chose not to challenge the quantitative portion of the management fees vis-à-vis the value of the services provided to the properties. Our challenge was that, accepting the law in New York, that when an entity is insolvent, such as all of the A&M entities were, that no transfer, every conveyance, every obligation. Fair consideration. No, no, no. Well, fair consideration is a two-pronged test. I need a manager for my property, and the property is being managed, and the manager wants a fee, and it's going on an ongoing basis. Paying that fee is not a fraudulent conveyance in New York. Well, I don't agree with that. Or else. I don't agree with that, but I want to draw a distinction. I want to draw a distinction, if I may. So the A&M entities had employees that were actually managing our property. You say someone else managed, too, but you took the management. Nobody. We have not sought. You stipulated that that manager was providing services, and that the fee, quantitatively, you say, you're not challenging that, was paid for those services. No. What I'm saying, no, it's not what I'm saying. What I'm saying is, is that there were actual A&M employees who were on site who actually managed the property. They were paid. We've never sought to challenge those payments. They charged you a fee, which was superfluous because you already were getting the services. That's exactly right. Every vendor of our . . . But you didn't challenge the amount of the fee they got. Every vendor was paid. Every employee was paid. A&M not only paid every bill relating to the A&M properties and paid all of its employees. A&M also . . . provided and paid for was clearly erroneous. We're here on a de novo review, and what I'm saying is, is that this management fee, which is paid . . . Why are you here on a de novo review? Because . . . Is this not a factual finding? That's what the question I asked was, was this not a factual finding by the district court, that there was fair compensation paid or fair services provided for the management fees? No, what the judge did, what the judge did is said, is created this exception. Because the law in New York says that when a company is insolvent, every conveyance, every obligation, every one of them that goes to an insider, okay, is fraudulent as to a creditor. And it is especially so . . . Aren't all the cases that you're relying on before a decision of this court that said that presumption only applies in the case of antecedent obligations, not in the case of ongoing services being provided? Well, I don't read . . . Actually, you're referring to the HBE case. Okay. So, the HBE case, I don't think actually says and provides for that holding. First of all, first of all, you've read our briefs. We think that the statute, which expressly says every conveyance and every obligation made while the debtor is insolvent is constructively fraudulent, every single one of them. We don't think that your decision in H.B. Franks was intended to create a judicially created exception to the plain language of the statute. Well, what was it intended to do then? I'll tell you what I think. You think it was wrongly decided? No, no, no, no, no, no. I'll tell you what I think. If we go back and we look at the H.B. . . I just need to check. You said every conveyance by an insolvent, and I'm looking at 273, and it says if it's made without a fair consideration. Yes, yes. And we're talking about whether the district court made a finding that there was fair consideration. But what the district court judge has decided fair consideration on one side of the coin. There's two. The district court judge said as a quantitative matter, we're not challenging that. Okay? But where's the good faith? In other words . . . What do you mean by a quantitative matter? I don't understand. If you're paying a fee and the amount of the fee is reasonable for the services provided, what is that but a quantitative assessment? Because this 6 percent is on top of everything else that was paid for actual services. What the 272 says is . . . Yes, but didn't the district court find that that is standard in the industry as if you have a management company, that's what you pay them? But what we're talking about is the situation where the entities were insolvent. That triggers 273. And under 272, the definition of fair consideration is both quantitative, which is what we've talked about, as well as in good faith. And the cases in New York, every single case that we've cited to, and I'm not aware of a case that says otherwise. We'll talk about HBE in a moment, if you'll just give me a moment. says that when an entity is insolvent, every single transfer, conveyance or obligation . . . 273 also says every obligation, doesn't have to be a conveyance. Every obligation which goes to an insider's pocket is fraudulent constructively. And that is especially so when the same entity controls the transferor and controls the transferee. In fact, the case law in New York says that it's an irrebuttable presumption, these transfers to insiders, that they lack good faith. And what the district court judge did is got stuck at the quantitative aspect and forgot about the good faith part of it. He addressed good faith in the motion for reconsideration. And came to the . . . And decided that the payment fell within the statute and was not . . . Okay, so let me . . . She did address it. That doesn't mean that we agree that the judge was correct. But it's not fair to say that she didn't . . . I'm sorry. I was referring to the . . . I'm referring to the judgment. So here's what happens in HBE. HBE, it's a really interesting case, but it's broken into sections. Section 1A of HBE is specifically entitled equitable subordination. What was happening there was the parties . . . is that mom, whether she . . . The district court found that she was an insider, but the court didn't ultimately resolve that on appeal. So mom lends $250,000 to her son's company. Stop. Right there. As a pure quantitative matter, on a balance sheet basis, okay, no creditor is harmed. That's what they're saying. And they're also saying that it doesn't matter whether the advance, not the exchange, whether the advance of money, the new cash coming in, okay, whether it came from an insider or not, is irrelevant. Now, if you think about it, all that happened is an asset was converted . . . Yes, sir. I want to read from page 26. Of HBE. Page 26 of Judge Wood's . . . Yes. Under the category of management fees. And ask if which of these were clearly erroneous. Regarding management fees, AFTC failed to establish, even under the preponderance standard, that the A&M Company's payments to GFTM lacked fair consideration. As an initial matter, AFTC offered no evidence that the management fees were disproportionate to the value of GFIM's management services. Indeed, during an exchange with the court, AFTC's counsel expressly declined to contend that the management fees were disproportionate. AFTC thus failed to prove that the management fee payments were not transferred before a fair equivalent value. That's fair equivalent. That's the quantitative side. Which of these findings were clearly erroneous? We do not challenge these findings on this appeal. Then you have no appeal. What's missing is this . . . What I'm saying is that the judge is focused on fair equivalent. Fair equivalent is one half of the statutory definition of fair consideration. Okay? All the judge is doing here is looking at the fair equivalent, which is the quantitative side, but not addressing the good faith element, which the courts say is an irrebuttable presumption that transfers to insiders, while insolvent, at the expense of a creditor are per se in bad faith. But the district court considered good faith, and in the motion for reconsideration, she says AFTC has pointed to no evidence to show that the transfers remain in bad faith. And she goes through a further discussion. Instead, the trial record shows the management fee payments were disclosed to AFTC and served as fair compensation. Yes. So even if we were to treat this as a separate independent requirement somehow, which I'm not entirely sure how that would play out, given that the amounts were shown to be proportionate within the industry standard the district court so found, you're saying that no matter that it was for contemporaneous consideration, that they were reasonable amount, that by virtue of the company's relationship, they have to be deemed fraudulent. Is that right? The answer is yes. The answer is yes, is that under the statute and under every single case in New York that has looked at transfers to insiders when the company is insolvent, every single case, HPE I don't think stands for the contrary proposition. Antecedent debts. Okay. No, on the contrary. We cited cases that are not only antecedent debts, but were also contemporaneous exchanges. I reviewed those cases, and each of them seemed distinguishable to me in some way. What do you think is your strongest case on that score? We're talking about a couple of appellate division cases, right? Well, we have the Southern District's case in Allen Morris, and Allen Morris makes the point of saying that, quote, with respect to the question of good faith, it has been held that transfers from an insolvent corporation to an officer, director, and major shareholder of that corporation are per se violative of the good faith requirement. It goes further, citing Atlanta Shipping, and goes further in citing Southern Industries, quote, such a transfer is irrebuttably presumed to be fraudulent for purposes of Section 273. So you can get back, according to you, money that was paid for services that were in fact provided. You got this? No, sir. No, I interrupted you. I'm sorry. But, no, that is absolutely not true. There is no effort whatsoever, there never has been, to get back money that were paid to people who actually provided on-site management services, the vendors who received money while managing the properties. We even paid the overhead of GFI management employees who actually provided services. There's never been an effort to recover that money. This is pure 6% gravy to the bottom line that came out of our properties and went into Mr. Gross's personal pocket. That is the classic exchange or conveyance of an insolvent debtor. You paid separately. I understood this, and maybe because I'm making assumptions and I shouldn't, that there was a fee paid every month to Mr. Gross's management company. In addition to every single expense which A&M was paying out to every single vendor and every single person. Why didn't you not pay it at the time? I'm sorry? Why didn't you not pay it at the time? I'm puzzled. Wait, wait, wait. I need to understand your question. I'm sorry. Let me get back to the basic here. You're saying that this was not a case where the management company billed you an overall fee for managing the properties. Instead, you're saying that you paid separately the people on site who did the management. No. Okay. You're paying an amount to the management company. A&M. A&M is paying the management. Okay. We're the owner of the property. Okay. So what A&M is doing, okay, A&M is paying every single expense relating to the actual management of the property. That's paid. Wait. Is not A&M paying a fee that covers those? No. Plus 6%. No. Oh, they are paying every one of those expenses, and then on top of that, A&M paid 6% to the management company, Alan Gross's management, on top of every other single expense. It is pure profit. There's nothing to it but pure 6% of the gross profit. So if there's an on-site manager. Paid. I didn't ask the question yet. If there's an on-site manager, he is not a salaried employee of GFI Management Services. That's true. That was a salaried employee of A&M and paid. So the only money that goes to GFI Management is the premium. That's correct. Including GFI Management supervisory executive employees or whatnot, A&M was charged overhead for them, and that was paid by A&M, too. If you had some other company that was not related to Mr. Gross, is not the finding that the standard industry practice is you would be doing exactly the same thing, that is paying an approximately 6% fee on top of whatever the specific expenses of the management company were? It's a counterfactual example because Mr. Gross testified that, and so did Judith Crook, the CFO of the company. They testified with these $100 million of intracompany loans going back and forth, that there were times when if one of his entities didn't have money to pay the management fee, they didn't pay it. So the evidence was is that when GFI Management wasn't able to collect a management fee from an entity that wasn't able to pay it, they didn't pay it, but they continued to manage the property. So this management fee is purely elective. So you're really saying that the district court's factual findings were clearly erroneous as to this because the actual management fee and cost associated with management had already been paid in some other kind of transfer? Is that right? I mean, because we aren't really talking about good faith here. We're talking about how much money was paid for what is how I am understanding this. That sounds like the argument. Well, okay. So the answer is yes, that is true. And that's why this is why all of this evidence is in the record. We made this record evidence to the court to explain to the district court judge that this 6% is over and above every possible expense that was paid. And it's disproportionate. Okay. And it's disproportional. Well, I could make that argument it's disproportional considering. It didn't before January. That's exactly my point. You found that you declined to contend that the management fees were disproportionate. Because but for this holding of HBE that I haven't had a chance to address yet, okay, the district court judge, I believe, misread that holding in HBE leasing. And the same with the Bank of Communications case, which supports every bit of my argument that I was trying to make. That the management fees were disproportional. You didn't have to pay the outside manager or the inside manager because you had employees to do all this work. Because the case law in New York says every single obligation, every single one of them, every conveyance of money that goes to an insider, while insolvent, the expensive creditor, okay, doesn't pass the test of fair consideration from the word go. Even if in fact, as a matter of fact, it is exactly what would be paid to any other entity doing the same work. Well, I think the answer there is but it wasn't. The answer there is that here you have an insider who is in possession of our properties. We can't get rid of him. We're doing everything we can to get him out. Is this a yes? I'm having trouble following the answer. Because what we're talking about here is, as I understand it, a factual finding that this 6% fee is absolutely industry standard. That if there was no Mr. Gross, if there was no insider, if some other entity were managing the property, they would get exactly the same amount of money that Gross got. We did not contest that that would be. You did not contest that that was true. Correct. And you're saying even if it is true, you're entitled to recover that money. Yes, sir. Okay. Yes, sir. Because- Why don't we hear from Mr. Zolmanowicz, okay? And you have several minutes for rebuttal. We'll hear you on- Thank you so much. Additional points then. Thank you, Your Honors. If it pleases the Court, Joseph Zolmanowicz, Eston Zolmanowicz, and I represent the FLEs, GFI Management Services, Inc., Alan Gross, and Edith Gross. I'd just, to start, like to point out from the record and get something very clear. First, Judge Wood was absolutely right. Not only did the evidence show that the management fees were fair, the rate was fair, services were provided, but counsel at the trial for AFTC agreed with that. And I'll just read you one portion. In fact, I think he made that admission or concession. I wouldn't say it's an admission. It's a concession in two places. On page 815 of the record, and I quote from AFTC's counsel, but it is not our contention that the management fees were fraudulent transfers in the context of there wasn't consideration, because they did appear to provide services for the work they did. And he goes on to say that a second time as well. And there was no question. He didn't dispute, and AFTC didn't dispute, that the management fee rate was fair, services were provided, and those services encompassed a lot of things, and they're all listed on page 30 and page 20 of our brief, right out of the record and from the court's opinion. It's a stipulated fact 18. So now for counsel to come and say, well, the management fees are a problem, their problem is because they have the wrong interpretation of what HBE leasing is and what the law is in this state. HBE leasing couldn't be more clear. For antecedent debt, there is a rule. If you're an insider and you're getting paid for antecedent debt, that presumes bad faith. However, for contemporaneous services provided, there is no bad faith so long as there is equivalent value, which is the case here. Exactly. And that's what the judge held. Thus, the debtor may receive fair consideration if it makes a payment to a corporate insider in exchange for new value contemporaneously provided. Exactly, Your Honor. And, in fact, AFTC, in their brief, agrees that there has to be. We give that de novo review because it's a conclusion of law, but it's a correct conclusion of law. Exactly, Your Honor. That's your whole argument. That is my whole argument on that point. Yes, Your Honor. Excellent. Thank you. And I just want to add, it is totally consistent with the law in New York State. Logic alone compels it. Imagine going to an insider and saying, the window is broken. It has to be fixed. Here's $10. Please fix the window. According to counsel, according to AFTC, that would be an insider fraudulent transfer. That's not the law here. In fact, we pay salaries of presidents of corporations on an ongoing basis because they're contemporaneous. That's the Silco case. The appellate divisions in New York State all adopt that. And it only makes sense. Unless Your Honors have any other questions. Would you care to address the pierce the corporate veil? Yes. Thank you, Your Honor. With respect to piercing the corporate veil, AFTC and the appellees agree that it's a heavy burden. What that heavy burden means, whether it's clear and convincing evidence, as we maintain, or whether it's preponderance, it makes no difference here, as the court specifically found. Let me ask a specific question. Yes. AFTC seems to be arguing that the district court was incorrect in treating intent or purposefulness as a requirement for veil piercing. What's your view about that? The court was, in fact, made it very clear in the court's decision on motion for reconsideration exactly what the standards are. It's the MARA standards. It's either a fraud was committed or there was injustice, a wrong that was perpetrated. You have to perpetrate the wrong. There is not one single decision. Do you think the law requires an intentionally unjust act? Intentionally would be the wrong word to use unless you place it in the right context. It means that you are performing conduct that you mean to do. In other words, you'll never find a case of abuse of the corporate structure for an innocence, for somebody acting innocently. There isn't any such thing. You won't find a case even with negligence. Because what the court demands to get through the basic structure of the insulation of the corporate structure is that there has to be some fraud or other wrong or injustice. The courts equate the two. That doesn't mean you have to have a finding of fraud. It doesn't mean you have to have the finding of intent that's required by fraud. But you have to mean to do something. And you have to mean to abuse the system. And you have to mean and intend to dominate the corporation in a way that will cause harm to someone else or an injustice or inequity. And that's what she meant, and she made it very clear in her motion for reconsideration decision. Thank you. Thank you, Jones. Mr. Semel, you have two minutes for rebuttal. Thank you. Working in reverse, I don't know what an intentional unjust act is. It seems to be undefined in New York law. The judge cites in her final judgment the Morris case, but Morris case doesn't say intentional unjust act. The Adeteks case. There has to be some wrong perpetrated. So tell me what is the wrong that was perpetrated by whatever failure to comply with corporate formalities happened here. Or breach of legal duty, as you said in Adeteks. Tell me what it is. What is the breach that we're talking about? What is the wrongfulness that we're talking about? Well, the wrongfulness that we presented, in addition to the fact that you have the trust fund doctrine, you have a breach of fiduciary duty issue here because the officers and directors had an obligation, once they were insolvent, to see to it that the creditors got paid. So that's the legal duty issue that you refer to in Adeteks. You called it a fiduciary duty? You think they had a fiduciary duty to the creditors? Yes, because they were already insolvent. It's not a zone of insolvency issue. They were actually insolvent, which is what the judge found. And Adeteks specifically says, citing electronic switching, that the standard is a wrong, a fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of a plaintiff's rights. We believe, and the argument that we had advanced was, in addition to the trust fund argument, was that these entities all acted without a legitimate business interest. None of them were acting for themselves. They were all acting for the benefit of one man who was the only one who could stand to benefit. None of these entities acted for their own best interest. And our argument, again a de novo argument, is that because the judge made the argument akin to a 276 argument under the fraudulent conveyance statute. In other words, she was saying that because we didn't prove intentional fraud under 276, well then for sure we didn't prove an intentional unjust act, and that was never the standard. What she was saying is that you didn't prove more than a breach of contract and litigation, and that doesn't seem to be enough in the ordinary course to pierce the corporate veil. Well, I read the very last paragraph of her opinion as saying that we didn't prove up an intentional unjust act. Would you agree that merely engaging in litigation and breaching a contract is not enough to pierce the corporate veil? The word merely, yes. This is not merely. This was an extraordinary piece of... What is the plus that you focus on in distinguishing? Okay. Number one is that the litigation was brought. None of it was designed to benefit any of the litigants in the case. It was designed to benefit Mr. Gross's... Those are factual issues. Is there a factual finding that supports what you just said? The judge seemed to agree that the case was of questionable merit. We're looking at a highly fact-specific matter when we come to piercing the corporate veil. You're saying that you just described what a plus factor is that makes this not a breach of contract, and yet you're not telling me that this is a fact that the district court found. This is what you assert, and there was a trial that went against you, so I'm trying to find out where is the... Are you saying that the judge was required somehow to make that finding? No. Again, this is sort of inverse clearly erroneous. By failing to make a finding that this litigation was all brought in bad faith for no good purpose or not to benefit the corporation, the district court erred. What I'm saying is, without challenging the factual findings, what I'm saying is that the court made factual findings and came to a conclusion saying, we didn't prove an intentional unjust act. You didn't prove... An intentional unjust act. And what I'm saying to this court is, is that the judge... I didn't set out to prove an intentional unjust act. I was required to prove that there was a fraud or a wrong, not an intentional unjust act. What does a wrong mean? I don't know what an intentional... It's hard to imagine what an intentional unjust act is. It's pretty easy to imagine what an intentional unjust act is when I know I'm doing something wrongful and I do it. That's what an intentional wrong means. What are you saying? You don't understand what that means. No, because I don't believe that the case law in New York... Requires that. Requires an intentional act of an intentional effort to hurt a creditor for purposes of alter ego or piercing. So what happened here was the judge, the district court... But there has to be something done, an intentional act, which is in fact wrongful. No. No. It doesn't have to be wrong. It does not have to be an intentional act. That's not... Morris does not require... A negligent act that accidentally inflicts wrong is sufficient to pierce the corporate veil? That would fall... That would fall... Well, there's... Not everything is either negligent or... You have trouble saying yes or no. No, a negligent act wouldn't be enough, but something else would be? Is that what you're saying? Yes. Okay. What is that something else? Okay. So here, here where you have the malicious... I'm going to call it maliciously prosecuted litigation designed... But a maliciously prosecuted litigation is an intentional wrong. That's what malice means. But we... I understand, but what I'm saying to the court is that I call it here a maliciously prosecuted case. Judge Wood found that GFIA had legitimate reasons for pursuing the PSA action. Is that clearly erroneous? Yes. That's what's clearly erroneous. Oh, absolutely. That is... Of anything that's clearly erroneous... That's why I want us to reverse. Okay. I wanted to say because the actions sought to promote the corporate interests of the A&M companies and GFIA in enforcing a transaction to which they had previously agreed. Being held to this heretofore unknown standard of an intentional unjust act, I think the court took the evidence and weighed it against a standard. Where do you, in your brief, argue that the finding that there was legitimate reasons for bringing that lawsuit was clearly erroneous? I don't. I was answering Judge Hellerstein's question. So you just made that up now? No, no. You asked me do I claim that. The answer is yes. I guess here you have to say either that the findings of fact are clearly erroneous, which I take it you would put it in your brief, or that Judge Wood made an error of law. And with respect to the fraudulent transfer claim and with respect to the piercing claim, the piercing claim we've argued we were held to an incorrect legal standard and for purpose... That mere undercapitalization is not enough to pierce the corporate ground. If I'm being held to an intentional unjustified act, if the district court were to measure this against what is a sufficient wrong, the judge may very well have found that we've established by the evidence that there was a sufficient wrong in order to pierce or... You're going around in circles. In answer to Judge Carney's question, you said the thing that is here that is more than a mere breach of contract, which you agreed would not be sufficient, is a malicious prosecution of a lawsuit. And it's a malicious prosecution because there were no legitimate reasons to do it. Then it was cited to you that the judge made a finding that there were legitimate reasons to bring that very lawsuit. And now you say you didn't have to make that argument in the brief because we are holding you to an unreasonable... No, no, no. You're the one who said, in response to Judge Carney's question, that the thing that makes this not a breach of contract is the malicious prosecution of a lawsuit. You said that. And I... And you said that a mere breach of contract wouldn't be enough, and this is the extra piece. Now it turns out that there's a factual finding that it wasn't malicious prosecution of a lawsuit, and you're saying, yeah, but that was clearly erroneous, which is something you didn't argue in your brief because you didn't have to? I was answering Judge Hellerstein's question. What I have said is that we've talked about the breach of fiduciary duty. Add a text tells us that if there's a breach of a legal duty, that's a sufficient basis. A breach of a legal duty doesn't necessarily mean an intentional unjust act. I can't tell... A breach of contract is a breach of a legal duty, is it not? Yeah, it can be. Sure. Well, the answer is yes. A breach of contract is always a breach of a legal duty. But in this instance, the parties... But it's still not enough to pierce the corporate veil, you said earlier. In my view, a mere breach of a contract with nothing more is not a sufficient basis to pierce a corporate veil. I think it takes... Thank you. I think we'll wrap up. Thank you for your arguments. We will reserve decision. Thank you. Thank you.